## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBORAH CHIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL, <br><br> Defendants. | Civil Action No. 04-CV-10294 DPW |
| MICHELLE TREBITSCH, On Behalf Of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, <br><br> Defendants. | Civil Action No. 04-CV-10307 DPW |
| INFORMATION DYNAMICS, LLC, On Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONUS NETWORKS, INC., PAUL R. JONES, EDWARD N. HARRIS, J. MICHAEL O'HARA, HASSAN M. AHMED and STEPHEN J. NILL, <br><br> Defendants. | Civil Action No. 04-CV-10308 DPW |

**[Additional Captions Follow on Next Page]**

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JAMES BROWER'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF LEAD COUNSEL

| | |
|---|---|
| PETER KALTMAN, On Behalf of Himself and All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV-10309 DPW |
| v. | |
| SONUS NETWORKS, INC., RUBEN GRUBER, HASSAN AHMED and STEPHEN NILL, | |
| Defendants. | |
| SAMANTHA DEN, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV-10310 DPW |
| v. | |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | |
| Defendants. | |
| RICHARD CURTIS, Individually And on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV-10314 MLW |
| v. | |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | |
| Defendants. | |

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| RONALD KASSOVER, on Behalf of the Ronald Kassover IRA and All Others Similarly Situated,<br><br>          Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL,<br><br>          Defendants. | Civil Action No. 04-CV-10329 DPW |
| STEVE L. BAKER, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL,<br><br>          Defendants. | Civil Action No. 04-CV-10333 DPW |
| MICHAEL KAFFEE, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>v.<br><br>SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL,<br><br>          Defendants. | Civil Action No. 04-CV-10345 DPW |

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| HAIMING HU, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-10346 DPW |
| v. | |
| SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL, | |
| Defendants. | |
| CHARLES STARBUCK, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV-10362 DPW |
| v. | |
| SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL, | |
| Defendants. | |
| SAMUEL HO, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV-10363 DPW |
| v. | |
| SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL, | |
| Defendants. | |

**[Additional Captions Follow on Next Page]**

JEFFREY C. RODRIGUES, Individually
and On Behalf of All Others Similarly
Situated,

        Plaintiff,

v.

SONUS NETWORKS, INC., HASSAN M.
AHMED, and STEPHEN J. NILL,

        Defendants.

Civil Action No. 04-CV-10364 DPW

ROBERT CONTE and MARK RESPLER,
Themselves and On Behalf of All Others
Similarly Situated,

        Plaintiff,

v.

SONUS NETWORKS, INC., HASSAN
AHMED, PH.D. and STEPHEN NILL,

        Defendants.

Civil Action No. 04-CV-10382 DPW

WHEATON ELECTRICAL SERVICES
RETIREMENT 401K PROFIT SHARING
PLAN, On Behalf of Itself and All Others
Similarly Situated,

        Plaintiff,

v.

SONUS NETWORKS, INC., HASSAN
AHMED, and STEPHEN NILL,

        Defendants.

Civil Action No. 04-CV-10383 DPW

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| BRIAN CLARK, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV-10454 DPW |
| v. | |
| SONUS NETWORKS, INC., PAUL R. JONES, EDWARD N. HARRIS, J. MICHAEL O'HARA, HASSAN M. AHMED and STEPHEN J. NILL, | |
| Defendants. | |
| SHEILA BROWNELL, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV- 10597 DPW |
| v. | |
| SONUS NETWORKS, INC., HASSAN AHMED, PH.D. and STEPHEN NILL, | |
| Defendants. | |
| SAVERIO PUGLIESE, On Behalf of Himself and All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 04-CV-10612 DPW |
| v. | |
| SONUS NETWORKS, INC., HASSAN M. AHMED, and STEPHEN J. NILL, | |
| Defendants. | |

**[Additional Captions Follow on Next Page]**

DAVID V. NOCITO, On Behalf of
Himself and All Others Similarly Situated,

　　　　　　Plaintiff,

v.

SONUS NETWORKS, INC., HASSAN M.
AHMED, and STEPHEN J. NILL,

　　　　　　Defendants.

Civil Action No. 04-CV-10623 DPW

Proposed lead plaintiff James Brower respectfully submits this memorandum of law in further support of his motion to be appointed lead plaintiff in the consolidated securities class action and approve his selection and retention of Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Lead Counsel.[1]  It is further submitted in reply to the oppositions filed by BPI Global Asset Management LLP ("BPI"), Global Undervalued Securities Master Fund ("Global"), The Farhat Group, Brad Rollow ("Rollow"), and Mohammed Akhtar ("Akhtar").[2]

## I. PRELIMINARY STATEMENT

James Brower is unquestionably the most adequate plaintiff to represent the Class in this litigation.  The arguments presented in other movants' oppositions attempting to challenge Mr. Brower's adequacy are unavailing and often erroneous.  Despite contentions to the contrary, Mr.

---

[1] On or about May 3, 2004, lead plaintiff movants filed with this Court a Stipulation And [Proposed] Order Granting Leave to File Reply Briefs In Support of Motions to be Appointed Lead Plaintiff, pursuant to which lead plaintiff movants who filed oppositions on April 26, 2004 jointly sought leave of court to file reply briefs in further support of their lead plaintiff applications.  Pursuant to the Stipulation, any lead plaintiff movant that filed an opposition brief by April 26, 2004 may file a reply brief with this Court by May 10, 2004.

[2] Twelve lead plaintiff applications were filed with this Court on April 12, 2004.  Subsequently, the following movants filed notices of withdrawal of their applications: the Belland Group, the Jiang Group, Saverio Pugliese, and Chris E. Paterick.  Thus, eight motions are currently pending before this Court.  Only six of those eight movants filed oppositions on April 26, 2004.  Accordingly, in this reply, Mr. Brower responds only to arguments made by movants filing oppositions.  With respect to the movants who have not withdrawn but failed to file an opposition (the Wexler Group and Jeffrey Foss), Mr. Brower reiterates his position that they should not be appointed lead plaintiff for the reasons set forth in his moving papers and his opposition.

Brower's losses of $400,874.88 as a result of his purchase of 147,275 shares of Sonus common stock were properly calculated using the First-in-First-Out methodology ("FIFO") for loss calculation and are based on an appropriate class period of April 9, 2003 through and including March 26, 2004. As such, Mr. Brower, an individual residing locally in West Bridgewater, Massachusetts, has a significant financial interest in this litigation. Moreover, Mr. Brower satisfies the requirements of Fed. R. Civ. P. 23. He has demonstrated his willingness and ability to adequately represent the Class and is not subject to any conflicts or unique defenses.

Conversely, all other movants filing oppositions in this action fail to satisfy the requirements of Fed. R. Civ. P. 23. First, BPI is an asset management firm that acts only as an investment advisor to its clients, not an investor itself, and has failed to demonstrate that it has standing to assert claims on behalf of the Class. As such, BPI is subject to unique defenses that preclude it from adequately representing the interests of the Class. Moreover, BPI filed its certification in violation of the Private Securities Litigation Reform Act (the "PSLRA") by failing to disclose a prior litigation where the Court found that it was not an adequate class representative.

Global is also incapable of adequately representing the Class. The individual signing Global's certification has no standing to assert claims on behalf of the Class. Moreover, counsel for Global, Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss"), suffers from disabling conflicts arising from its role as lead counsel in an earlier action currently pending before Judge Wolf filed against Sonus Networks Inc. and other defendants for violations of securities laws (the "Sonus 2002 Case"). Additionally, Global's status as a hedge fund subjects it to unique defenses that render it inadequate to represent the Class.

The Farhat Group is a lawyer-driven group consisting of four individual investors, *each of whose losses are significantly less than Mr. Brower's losses*, with no pre-existing relationship. The Farhat Group has failed to provide the Court with any information regarding its members and how they came together, their experience and ability to manage a complex litigation, and how acting as a group would benefit the Class. Thus, the Farhat Group is not the most adequate lead plaintiff.

The remaining movants filing oppositions, Rollow and Akhtar, allege losses substantially less than those of Mr. Brower. Accordingly, they fail to satisfy the most adequate plaintiff requirement of the PSLRA and should not be appointed lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## II. ARGUMENT

### A. The Court Should Appoint Mr. Brower Lead Plaintiff

#### 1. Mr. Brower Has A Significant Financial Interest In The Litigation

##### a. Mr. Brower's Losses Were Properly Calculated Using FIFO

During the Class Period, Mr. Brower suffered losses of $400,874.88 as a result of the purchase of 147,275 shares of Sonus common stock. In a footnote in his opposition, Akhtar argues that Mr. Brower's losses are inaccurate because he failed to net proceeds from sales of 39,300 shares of Sonus common stock. *See* Akhtar Memo. at p. 4 n.1. Akhtar, however, is mistaken.

It is clear from the table reflecting Mr. Brower's losses (attached as Exhibit D to the Matraia Decl. submitted with Mr. Brower's moving papers) that the 39,300 shares Akhtar is referencing represent the number of shares of Sonus common stock Mr. Brower *held at the*

3

*beginning of the Class Period*. These shares were then matched against Mr. Brower's sales of Sonus common stock based on the FIFO methodology. While Akhtar suggests that the FIFO methodology is inappropriate and a net/net approach should be used instead, this argument is contrary to the vast majority of authority, the regulations of the IRS, and the purpose underlying the enactment of the PSLRA.

Under the PSLRA, losses are calculated as the difference between the purchase price paid and the mean trading price over a 90-day period beginning after the close of the class period. *See* 15 U.S.C. § 78u-4(e)(1) (requiring damages to be based upon the mean trading price for the 90 days after the correction was revealed, which period has yet to expire). Besides this requirement, the PSLRA is silent as to how purchases and sales must be matched against one another to calculate losses. The vast majority of courts, including courts in this district, have recognized the FIFO approach as an appropriate way to make this calculation. *See In re Lernout & Hauspie Sec. Litig.,* 138 F. Supp. 2d 39 (D. Mass. 2001); *see also Albert Fadem Trust v. WorldCom, Inc.,* No. 02-Civ. 3288 (DLC), 2002 U.S. Dist. LEXIS 15005, at *6 (S.D.N.Y. Aug. 15, 2002); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 411 (D. Minn. 1998) (accepting computation of damages using the FIFO method); *In re Chipcom Corp. Sec. Litig.*, No. CIV. A. 95-11114, 1997 WL 1102329, at *24 (D. Mass. June 26, 1997); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002).

Additionally, the FIFO methodology has consistently been used by claims administrators to determine each class member's share for purposes of distributing money recovered for the

Class.[3] The IRS also uses FIFO to determine losses and gains in connection with the purchase and sale of stock. Specifically, the IRS requires that "[i]f shares of stock . . .are sold or transferred by a taxpayer who purchased or acquired lots of stock on different dates or at different prices, and the lot from which the stock was sold or transferred cannot be adequately identified, the stock sold or transferred shall be charged against the earliest of such lots purchased or acquired in order to determine the cost or other basis of such stock." 26 C.F.R. § 1.1012-1(c)(1);[4] *see also Holmes v. Commissioner of Internal Revenue*, 134 F.2d 219, 221 (3d Cir. 1943) (observing that "[t]he First-in, first-out rule is so old and well known that any extended explanation of it in this opinion would be superfluous. It is incorporated in [the tax code]. It is sufficient to say that it establishes a presumption to be followed . . ."); *Kluger Assocs. Inc. v. Commissioner of Internal Revenue*, 617 F.2d 323, 324 (2d Cir. 1980); *Joseph Gann, Inc. v. Commissioner of Internal Revenue*, 701 F.2d 3, 4 (1st Cir. 1983).[5]

Thus, Mr. Brower properly calculated his losses using FIFO, the methodology accepted and endorsed by the vast majority of courts, the IRS, and class action claims administrators as

---

[3] *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 127 (D.N.J. 2002) (recognizing use of FIFO in calculating damages for class members); *In re Storage Tech. Corp. Sec. Litig.*, 84-F-1981, 1990 U.S. Dist. LEXIS 18462, at *16 (D. Colo. Sept. 28, 1990) (using FIFO method for purposes of determining Recognized Loss of class members); *In re Sea Containers Ltd. Class Action Sec. Litig.*, No. 89-0930, 1990 WL 99307, at *4 (D.C. July 6, 1990) (using FIFO to compute claims under settlement).

[4] Section 1.1012-1(c) of the Tax Code sets forth the rules governing the bases of stock sold by a taxpayer who has acquired blocks of stock on varying dates or at varying costs. Subdivision (1) mandates the use of FIFO unless the lot from which the stock is sold can be adequately identified.

[5] While Akhtar cites *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) in support of his assertion that the net/net approach should be used, *Olsten* is not inconsistent with the FIFO methodology. The *Olsten* court listed four factors courts should consider when calculating a plaintiff's loss: "(1) the number of shares purchased during the class period; (2) the number of *net* shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses during the class period." *Id.* (emphasis added). It is impossible, however, to know the net shares purchased without first knowing which shares are considered as being in the net. Accordingly, the *Olsten* factors simply address the loss calculation *after* a methodology, such as FIFO, has been adopted by the court.

the most effective and efficient means for determining financial losses.  Accordingly, his losses

of $400,874.88 are accurate.

### b.  Mr. Brower's Losses Were Based On
### The Appropriate Class Period

Rollow devotes a significant portion of his opposition arguing that the Court should only

consider purchases and sales between June 3, 2003 and February 11, 2004, which he claims is

the correct class period for this action.  *See* Rollow Mem. at pp. 12-13.  Rollow's arguments are

unavailing.

As an initial matter, the class period that will ultimately govern this action will be

determined at a later date.  Specifically, after the Court appoints the Lead Plaintiff and Lead

Counsel in this action, an amended complaint will be filed which will set forth the class period to

govern this action.  Nevertheless, as explained in his moving papers, the initial complaints filed

in this action allege a variety of class periods.  For purposes of calculating his losses, Mr. Brower

used the longest class period of April 9, 2003 through and including March 26, 2004, an

appropriate class period for this action.  *See* Brower Mem. at p. 2 n.1.

April 9, 2003 is an appropriate start date for the class period.  On April 9, 2003,

defendants issued a press release announcing Sonus' financial results for the first quarter ended

March 31, 2003.  Defendants subsequently announced that the reported financial results would

need to be restated due to improper revenue recognition practices.  As such, defendants'

statements beginning on April 9, 2003 were false and misleading.

Contrary to Rollow's assertions, a class period extending until March 26, 2004 is

appropriate.  On February 11, 2004, after the markets closed, Sonus shocked the investing public

by announcing that an internal review in connection with the Company's year-end audit

identified certain issues, practices and actions of certain employees relating to both the timing of

revenue recognized from certain customer transactions and to certain other financial statement accounts. The Company conveyed to the public that it expected the issues would affect *2003* financial results. Subsequent disclosures, however, revealed additional information concerning the fraud. Specifically, prior to the opening of trade on March 29, 2004, the Company announced that it also expected to restate financial results for *2002*, in addition to 2003. In response to the March 29, 2004 announcement, the value of the Company's stock further declined $0.64 or 14% from $4.56 on March 26, 2004 to close at $3.92 on March 29, 2004 on high volume of 33.9 million shares. A class period ending on February 11, 2004 may have been appropriate given the information available in February when the first initial complaint in this action was filed. The subsequent disclosures, however, resulted in a longer class period.

Rollow's argument that purchasers before June 3, 2003 suffered no actual loss is flawed. *See* Rollow Mem. at pp. 12-13. As demonstrated above, March 26, 2004 is the appropriate date to end the class period in this action. Therefore, assuming *arguendo* the Court adopted Rollow's theory concerning actual loss, a class period commencing on May 12, 2003 would be appropriate because that was the first day that Sonus common stock traded above $3.73 per share, the low reached on March 29, 2004. Using a class period of May 12, 2003 through and including March 26, 2004, Mr. Brower suffered losses of $399,882.36, *which is still significantly higher than the losses claimed by Rollow.*[6]

---

[6] Furthermore, even assuming *arguendo* the Court applied a class period of June 3, 2003 through and including February 11, 2004 as advocated by Rollow, an analysis of Mr. Brower's transactions in Sonus common stock during this time reveals that he suffered losses of approximately $300,000 as a result of the purchase of 107,975 shares of Sonus common stock during this time, *not* $199,877 as Rollow argues in his opposition. Accordingly, even if the June 3, 2003 through February 11, 2004 class period applies, Mr. Brower's losses still significantly exceed Rollow's claimed losses of $209,270 and Mr. Brower is still the *only* movant who satisfies the requirements of Fed. R. Civ. P. 23 as discussed below.

### 2. Mr. Brower Satisfies The Requirements Of Fed. R. Civ. P. 23

In addition to having a significant financial interest in the litigation, Mr. Brower is the only movant who satisfies the requirements of Fed. R. Civ. P. 23. As further discussed in his moving papers and opposition, Mr. Brower satisfies the typicality and adequacy requirements, which are the only requirements the Court should consider at this time. *See Lernout & Hauspie*, 138 F. Supp. 2d at 45-46 (recognizing that plaintiffs seeking appointment as lead plaintiff need only make preliminary showing that they satisfy Rule 23 typicality and adequacy requirements); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) (in deciding a lead plaintiff motion, court should limit inquiry to typicality and adequacy prongs and defer examination of remaining requirements until class certification).

Mr. Brower unquestionably satisfies the typicality requirement of Rule 23(a). His claims are typical of, if not identical to, the claims of the other members of the Class, as they arise from Sonus and the individual defendants' false and misleading statements concerning the Company's financial results. *See* Brower Mem. at pp. 10-12; Brower Opp. at pp. 4-5. Mr. Brower also satisfies the adequacy requirement of Fed. R. Civ. P. 23. Unlike the other movants, Mr. Brower has no conflicts or interests antagonistic to those of the Class. *See* Brower Mem. at pp. 12-13; Brower Opp. at p. 5.

Furthermore, Mr. Brower has submitted a declaration (attached hereto as Exhibit A) confirming his desire to be Lead Plaintiff and demonstrating his ability to serve as Lead Plaintiff in this action. As detailed in his declaration, Mr. Brower is motivated to pursue this action and has an understanding of his responsibilities as Lead Plaintiff, including making himself available for deposition and trial if necessary. Brower Decl., ¶¶ 1, 5. Mr. Brower has approximately twenty years of experience investing in securities. *Id.* at ¶ 4. He has conferred with his selected

Lead Counsel, Berman DeValerio, regarding this litigation and discussed procedures to effectively prosecute this action on behalf of the Class, including regular telephone calls or meetings to discuss and evaluate the case and his receipt and review of important pleadings and other documents in the case. *Id.* at ¶¶ 6-7. Indeed, Mr. Brower has reviewed papers filed by Berman DeValerio in connection with the lead plaintiff process. *Id.* at ¶ 2. He has also discussed with Berman DeValerio the issue of attorneys' fees in this action. *Id.* at ¶ 7.

Accordingly, contrary to other movants' contentions to the contrary, Mr. Brower has more than sufficiently demonstrated his ability to oversee this action and to act in the best interest of the Class to obtain the maximum recovery.

## B. BPI, Global, And The Farhat Group Present Meritless Arguments

The arguments presented by BPI, Global, and the Farhat Group in their oppositions are without merit. While all three movants argue that they should be lead plaintiff because they claim larger losses than Mr. Brower, the lead plaintiff determination is not a simple mathematical calculation. Indeed, the PSLRA provides that the Court is to appoint as the lead plaintiff the movant with the largest loss *and who otherwise satisfies Rule 23*. 15 U.S.C. 78u-4(a)(3)(B)(iii)(I) (emphasis added). Unlike Mr. Brower, BPI, Global, and the Farhat Group all fail to satisfy the requirements of Rule 23 and the PSLRA. Consequently, they are not the most adequate lead plaintiff.

### 1. BPI Is Not The Most Adequate Plaintiff

#### a. BPI Has Failed To Demonstrate Its Standing To Assert Claims On Behalf Of The Class

As an investment management firm, BPI simply manages portfolios for various clients, acting purely as an investment advisor, not an investor. As such, BPI lacks standing to bring claims on behalf of the Class.

While BPI devotes a substantial portion of its opposition arguing that it has standing to serve as lead plaintiff, BPI is wrong.  Specifically, BPI contends that its purported full investment discretion for its clients' purchases of Sonus stock is sufficient to establish its standing to assert claims on behalf of the Class.  BPI's position, however, has been repeatedly rejected by courts.

Simply because an investment manager may possess authority to purchase or sell stock on behalf of its clients does not automatically mean that the manager has the authority to commence suit on behalf of its clients.  *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) ("Generally, a client's grant of authority to an investment manager to purchase stock on his or her behalf does not also confer authority to commence suit on his or her behalf"); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002) ("clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf").  Accordingly, numerous courts have held that an investment manager only has standing to serve as lead plaintiff if it demonstrates complete investment authority for its clients *and* is the agent and attorney-in-fact for its clients with full power to bring suit for the clients' investment losses.  *Weinberg*, 216 F.R.D. at 255 ("when the investment advisor is *also* the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue on its own name") (emphasis added); *Smith*, 206 F. Supp. 2d at 634 (to be lead plaintiff, asset manager "should provide evidence that it '[is] attorney-in-fact for . . . clients and . . . authorized to bring suit to recover for . . . investment losses'") (citation omitted).

In *Smith*, an investment advisor sought to serve as lead plaintiff in a securities class action.  *Smith*, 206 F. Supp. 2d at 633-34.  In analyzing whether the investment manager had

10

standing to assert claims on behalf of the Class, the court noted that "where a court appoints an asset manager as lead plaintiff, the plaintiff should provide evidence that it 'acts as attorney-in-fact for its clients and is authorized to bring suit to recover for, among other things, investment losses.'" *Id.* at 634 (citation omitted). The investment manager, however, failed to demonstrate that its clients had given it authority to file lawsuits on its behalf. *Id.* at 635. Indeed, the investment manager failed to demonstrate that its clients even knew it had commenced the action on their behalf. *Id.* Consequently, the court declined to appoint the investment manager as lead plaintiff. *Id.* at 635-36.

Here, BPI has only claimed that it possessed full authority to purchase and sell the Sonus stock on behalf of its clients. As in *Smith*, BPI submits no evidence that it is the attorney-in-fact for its clients or possesses authority to commence suit on behalf of its clients for investment losses. Indeed, as in *Smith,* there is nothing before the Court that indicates that BPI's clients even know that this action has been commenced. Furthermore, BPI claims to have full investment discretion over its clients' investments in Sonus stock *only*, not discretion over its clients' investments in general, and has offered no proof of its discretion other than a blanket statement by an employee of BPI. Pursuant to the foregoing analysis, the declaration submitted by BPI in support of its opposition is entirely inadequate to establish its standing to serve as lead plaintiff in this action.

Indeed, even the cases relied upon by BPI in its opposition undermine BPI's argument that its discretion to purchase Sonus stock on its clients' behalf is alone sufficient to establish standing. *Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 441 (W.D. Pa. 2001) (finding investment advisor had standing to serve as lead plaintiff *where it filed declaration stating it was the attorney-in-fact with authorization to bring suit to recover for investment*

*losses*).  BPI's attempts to distinguish *In re Turkcell Illetism Hezmetler, S.A. Sec. Litig.*, 209

F.R.D. 353 (S.D.N.Y. 2002), fail.  The facts here are on point with those in *Turkcell*.  Here, BPI

claims that it has full discretion over its clients' investments.  Similarly, in *Turkcell*, BPI's clients

delegated to BPI full discretion to purchase securities.  *Turkcell*, 209 F.R.D. at 358.

Nevertheless, the *Turkcell* court concluded that BPI was *not* the purchaser of the stock and

consequently, lacked standing to serve as lead plaintiff.  *Id.*[7]

### b.  BPI Filed Its Certification In Violation Of The PSLRA

Further, as discussed in Mr. Brower's opposition, BPI filed its application in violation of

the PSLRA.  Despite the PSLRA's explicit requirement that plaintiffs' certifications identify any

other action in which he or she sought to serve as a representative party, BPI failed to disclose

that it sought to serve as a representative party in *Turkcell*.  BPI clearly recalled its involvement

in *Turkcell*, as evidenced by its reference to the case in its own opposition.  As such, BPI's

failure to disclose *Turkcell* appears to be a deliberate attempt on its part to hide the *Turkcell*

court's ruling that BPI was incapable of representing investors in a securities fraud class action.

BPI's lack of candor and blatant disregard for the laws governing private securities actions

further undermine its argument that it should be lead plaintiff.  *See* Brower Opp. at pp. 8-9.

### 2.  Global Is Not The Most Adequate Plaintiff

As discussed in Mr. Brower's opposition, Global is also incapable of adequately

represent the Class for a number of reasons, including:

---

[7] BPI cites one case, *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101 (W.D. Pa. 2003), for the proposition that *Turkcell* has been criticized.  The facts in *Rent-Way*, however, are readily distinguishable from the facts here.  First, while in *Rent-Way* the investment advisor submitted copies of its investment advisory agreements with clients as evidence of its full discretion to purchase securities on its clients' behalf, BPI here has submitted nothing but a blanket statement from a BPI employee concerning its investment authority.  Furthermore, while in *Rent-Way* the investment advisor claimed to have general authority to purchase all securities on its clients' behalf, BPI appears to claim to have more limited authority, claiming investment discretion as to its clients' purchases of *Sonus stock only*.  Moreover, other courts have followed the *Turkcell* court's decision and analysis.  *Weinberg*, 216 F.R.D. at 255.

- While an employee of Kleinheinz Capital Partners, Inc. ("Kleinheinz"), Global's investment manager, signed Global's certification, Kleinheinz lacks standing to assert claims on behalf of the Class because it acts merely as Global's investment advisor. Furthermore, the employee signing the certification was simply an "analyst" at Kleinheinz with no authority to make decisions on behalf of Kleinheinz and presumably lacked authority to sign the certification in the first place.[8] *See* Brower Opp. at pp. 9-10.

- Counsel for Global, Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss"), suffers from disabling conflicts which preclude its appointment as lead counsel arising from its role as lead counsel in an earlier action currently pending before Judge Wolf filed against Sonus Networks Inc. and other defendants for violations of securities laws (the "Sonus 2002 Case"). *See* Brower Opp. at pp. 10-11.

- Global's status as a hedge fund engaging in atypical trading strategies subjects it to unique defenses that render it inadequate to represent the Class.[9] *See* Brower Opp. at pp. 12-13.

Furthermore, Global has still failed to provide the Court with any information about its qualifications or ability to manage this litigation. For example, Global's opposition, like its

---

[8] Tellingly, as with its moving papers, Global does not mention Kleinheinz once in its opposition, which further demonstrates Global's lack of candor and suggests that Global did not even review the complaint, authorize the filing of the complaint on its behalf, or express any willingness to represent the Class in this action.

[9] While Global claims that it purchases and sells securities from its own account and did not engage in hedging investment strategies "for purposes of this litigation," Global offers nothing but this blanket statement to support its position. Global fails to provide any evidence supporting its contention, nor does it define what it feels constitutes "hedging investment strategies."

moving papers, is silent as to what assets Global has and who manages the assets; who is responsible for managing this litigation; what qualification they have; their familiarity with the securities laws; and their ability to discharge their fiduciary duties as lead plaintiff. *See In re Conseco, Inc. Sec. Litig.,* 120 F. Supp. 2d 729, 732 (S.D. Ind. 2000) ("bare certification form" failed to demonstrate adequacy of proposed lead plaintiffs); Brower Opp. at pp. 13-14.[10]

### 3.  The Farhat Group Is Not The Most Adequate Lead Plaintiff

The Farhat Group also should not be appointed lead plaintiff because it fails to satisfy the requirements of Fed. R. Civ. P. 23. *See* Brower Opp. at pp. 14-17.

As an initial matter, Mr. Brower's losses far exceed each of the individual members of the Farhat Group's losses. While the Farhat Group contends otherwise, courts have held that an individual investor such as Mr. Brower is a more adequate lead plaintiff than a group of unrelated investors such as the Farhat Group. *In re Network Assoc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1026-27 (N.D. Cal. 1999) (concluding "[a]rtificial aggregation of [group of unrelated investors] should never be allowed for any purpose" and instead appointing single movant lead plaintiff). Unlike the Farhat Group, appointing Mr. Brower lead plaintiff is consistent with the PSLRA's goal of client control of the litigation. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1999) ("increasing the number of Lead Plaintiffs [will] detract from the Reform Act's fundamental goal of client control as it [will] inevitably delegate more control and responsibility to the lawyers for the class and make the class representatives more reliant on the lawyers") (citation omitted); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803,

---

[10] Global's argument that its appointment as lead plaintiff in *Pierce v. Americredit Corp.*, 03-CV-026 (N.D. Tx. 2003) demonstrates its adequacy to represent the Class in this case is unavailing. In *Pierce*, all other movants withdrew their lead plaintiff applications. *No oppositions were even filed in the case.* As such, the court never engaged in a detailed analysis of Global's fitness to be lead plaintiff. Indeed, the court's order contained no statement regarding Global's ability to represent the class. The court simply granted the only lead plaintiff application pending before it. Additionally, Global was appointed *co*-lead plaintiff along with two pension funds, not the sole lead plaintiff as it seeks here. Finally, class certification has not yet occurred in *Pierce* and therefore, the Court could still conclude that Global is inadequate to represent the class in that case.

815 (N.D. Ohio 1999) ("The larger the group, the less incentive any single member of the group .

. . will have to exercise any supervision or control over the litigation"); *In re Donnkenny Inc.*

*Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) ("To allow an aggregation of unrelated

plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff . . . . To allow

lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would

allow and encourage lawyers to direct the litigation").

      Moreover, the Farhat Group has still failed to provide any meaningful information about

its four members and their ability to adequately represent the Class.  The joint declaration

submitted by the Farhat Group continues to be deficient as it fails to demonstrate how its

members came together as a group.  *See Howard Gunty Profit Sharing Plan v. Carematrix*

*Corp.*, No. C.A. 99-12318-MLW, 2000 WL 33348124, at *5 (D. Mass. Aug. 15, 2000) (noting

proposed lead plaintiff group should "explain its members' association, how they came to form a

group, and how they would work together"); *Lernout & Hauspie*, 138 F. Supp. 2d at 45

(proposed lead plaintiff group should explain and justify its composition and structure, including

describing its members, how its members would function collectively, and mechanisms its

members and proposed lead counsel have established to communicate); *In re Lucent Techs. Inc.*

*Sec. Litig.*, 194 F.R.D. 137, 151 (D.N.J. 2000); *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D.

246, 250 (E.D. Va. 1999) (concluding lead plaintiff failed to demonstrate adequacy where lead

plaintiff failed to provide any "meaningful information about the identity of its seven members

other than to offer their names, a summary of the transactions by which they purchased [the

company's] securities, and the 'simple mathematical' conclusion that they have the largest

financial interest in the case.").  The Farhat Group has still not provided any information

showing that their connection to one another is anything more than a group of individual

investors whose losses were aggregated by their counsel for the mere purpose of attempting to create the largest financial loss. *In re Critical Path Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1111 (N.D. Cal. 2001) (declining to appoint group of investors lead plaintiff where they lacked preexisting relationship); *Network Assoc.*, 76 F. Supp. 2d at 1026 ("To enable the court to assess whether the proposed group is capable of performing the lead plaintiff function, it should provide appropriate information about its members, structure, and intended functioning. Such information should include descriptions of its members, including any pre-existing relationships among them . . . "); *Lucent Tech.*, 194 F.R.D. at 151 (holding proposed group should provide information to court encompassing, at minimum "a description of the members, an explanation of how the group was formed, whether there was a pre-existing relationship").

### C. Rollow And Akhtar Are Not The Most Adequate Lead Plaintiffs

As discussed above, Mr. Brower suffered losses of $400,874.88 as a result of his purchase of Sonus common stock during the Class Period. His losses significantly exceed the losses of both Rollow, who claims losses of $209,270,[11] and Akhtar, who claims losses of

---

[11] While Rollow claims that he suffered losses of $209,270, his lead plaintiff application is insufficient as it contains only a series of transactions in Sonus stock and fails to include any analysis regarding his losses. Indeed, from a review of the *27 pages* of Rollow's transactions, it is impossible to determine with any certainty whether Rollow actually suffered the losses he claims. For example, it is impossible to determine Rollow's beginning balance in Sonus stock, which is necessary to accurately determine his losses. Additionally, it is unclear whether Rollow included in his losses stock options listed as transactions. Nevertheless, his claimed losses are substantially lower than Mr. Brower's losses.

Moreover, based on a review of Rollow's transactions in Sonus stock, he seems to have engaged in atypical trading strategies. Specifically, Rollow frequently made an extremely large number of purchases and sales of Sonus stock within a single day. For example, on October 14, 2003 alone, Rollow made approximately *200* separate sales of Sonus stock. Similarly, on November 14, 2003, he made nearly *200* purchases of Sonus stock and on February 10, 2004, he made nearly *150* separate sales of Sonus stock. He engaged in such practices throughout the class period. These trading practices suggest that Rollow is a speculative investor and may not have relied upon the market price of Sonus stock in making his decision to purchase the stock. As a result, the fraud on the market theory, which is central to the Class' claims in this action, may not be available to Rollow. *See In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001); *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 392 (D.N.J. 1998); *Weintraub v. Texasgulf, Inc.*, 564 F. Supp. 1466, 1471 (S.D.N.Y. 1983) (declining to appoint as lead plaintiff "sophisticated speculative trader whose unusual trading activities will give rise to unique defenses that may have the ultimate effect of prejudicing members of the proposed class"). Accordingly, Rollow's trading practices subject him to unique defenses that preclude him from adequately representing the Class.

16

$45,440. [12]  Accordingly, Rollow and Akhtar fail to satisfy the most adequate plaintiff requirement of the PSLRA and their motions should be denied. *See* 15 U.S.C. § 78u-4(a)(3)(B)iii)(I).

### III.    CONCLUSION

For all the foregoing reasons, James Brower respectfully requests that this Court: (i) consolidate all related actions; (2) appoint him as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and (3) approve his selection of Berman DeValerio as lead counsel for the Class.


Dated:  May 10, 2004                                  Respectfully submitted,

                                                     **BERMAN DEVALERIO PEASE**
                                                     **TABACCO BURT & PUCILLO**

                                                     /s/ Michael T. Matraia
                                                     Jeffrey C. Block, BBO # 600747
                                                     Michael T. Matraia, BBO # 633049
                                                     Nicole R. Starr, BBO #654848
                                                     One Liberty Square
                                                     Boston, Massachusetts 02109
                                                     (617) 542-8300

                                                     **Attorneys for Plaintiff James Brower and**
                                                     **Proposed Lead Counsel**

                                                     Eduard Korsinsky
                                                     Zimmerman Levi & Korsinsky, LLP
                                                     39 Broadway, Suite 1440
                                                     New York, NY  10006
                                                     (212) 363-7500

Sonus/p/LP_Reply_FINAL

---

[12] The Court should not consider the arguments set forth in Akhtar's opposition because he failed to properly file his opposition with the Court.  Specifically, Akhtar failed to electronically file his opposition with the Court despite this Court's order dated April 12, 2004 requiring electronic filing of all submissions in this action.